UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| JANE BUSTOS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Cause No.: 1:07-CV-116 |
| WHITLEY COUNTY CONSOLIDATED SCHOOLS, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment filed by the defendant, Whitley County Consolidated Schools (the "defendant" or "WCCS") on June 15, 2008. Docket at 25. The plaintiff, Jane Bustos (the "plaintiff" or "Bustos") filed a response in opposition to the motion on August 22, 2008. Docket at 37. WCCS filed a reply brief on September 8, 2008. Docket at 39. After receiving the permission of the court to do so, Bustos filed a sur-reply on October 24, 2008. Docket at 51. Also pending before the court is a Motion to Strike filed by WCCS on September 8, 2008. Docket at 41. On October 24, 2008, Bustos filed her response in opposition to the defendant's motion to strike. Docket at 50. The defendant's reply to the plaintiff's response to the motion to strike would have been due on or about November 10, 2008. However, the defendant's counsel communicated to the Clerk's Office that no reply would be forthcoming. Therefore, the motions are ripe for resolution.[1] For the reasons set forth below, the motion to strike is DENIED in part and MOOT in part, and the

---

[1] On September 12, 2008, Bustos filed a Motion for Additional Discovery and for Leave to Submit Supplemental Affidavits. Docket at 42. That motion was granted on September 15, 2008, by Magistrate Judge Roger Cosbey, to whom this case is on partial referral. Docket at 43.

motion for summary judgment is DENIED.

## FACTUAL BACKGROUND

Jane Bustos was employed by the Whitley County school system from 1985 until the middle of 2006. Bustos began her career with WCCS as a teacher. By 2002, she was the Director of the Marshall Community Center. Bustos claims that she "had achieved the experience, expertise, and responsibilities equal to that of Defendant's elementary school principals, who were all male, but the defendant never granted her equal pay." Plaintiff's Memorandum/Answer Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), docket at 38, p. 1. Bustos left her employment with WCCS in mid-2006 and filed the present lawsuit about one year later. Bustos alleges that WCCS "subjected her to sex-based pay discrimination, in violation of Title VII and the Equal Pay Act." *Id.*

Bustos received several performance reviews during the course of her employment, and she maintains that they were all exemplary. *Id.*, p. 2. In 1997, Bustos became the Director of Special Programs at the Marshall Community Center and was responsible for "overseeing preschool programming (including for special education students), alternative education, the Gifted and Talented Program, and adult education; she was also responsible for the coordination of grants and textbook adoption, among other things." *Id.*; Plaintiff's Exhibit 1, Affidavit of Jane Bustos (Bustos Aff.). By 2001, Bustos's responsibilities had grown even more, to the point that "she was in every respect the Principal and Building Administrator of her own school." *Id.*, p. 3; (Bustos Aff., ¶ 2). At this point in time, Bustos claims, "she realized that her rate of pay should be brought in line with that of the elementary school principals[.]" and she contends that she complained "several times" to WCCS Superintendent William Carnes, Assistant Superintendent

2

Dr. Sylvia Weber, Superintendent Dr. Laura Huffman (who succeeded Carnes when Carnes retired), and the School Board about what she perceived as an unequal pay issue. Despite her alleged repeated protests, Bustos claims that the pay disparity continued and that her "rate of compensation never was brought up to that of the other (male) elementary school principals' rates of compensation." *Id*., pp. 3-4.

Bustos admits that she was never officially named the principal of the Marshall Community Center or any other Whitley County Consolidated school. Nevertheless, she argues that she should have received compensation equal to that of male employees who were employed as principals, since Bustos performed virtually the same duties and had the same responsibilities. According to Bustos, by denying her pay that was equal to those male principals WCCS "ignored the true role she had taken on at Marshall." *Id*., p. 7. Bustos argues that "[t]here was no difference between . . . her duties and responsibilities, nor anything else that caused her to deserve less money than other principals within the [School System]." *Id*., p. 8. Bustos brings the present lawsuit seeking compensatory and statutory damages as a result of the alleged discriminatory acts of the defendant, which she alleges violated Title VII of the Civil Rights Act of 1964 and the Equal Pay Act. Additional facts are recited below as they become relevant to the issues discussed in this Order.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict

for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322; *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). A failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325. A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which

4

are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available. *Seener v. Northcentral Technical Coll.,* 113 F.3d 750, 757 (7th Cir. 1997); *Wohl v. Spectrum Mfg., Inc.,* 94 F.3d 353, 354 (7th Cir. 1996). To that end, the court carefully reviews affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination. However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir. 1997).

## DISCUSSION

**1. Defendant's Motion to Strike.**

WCCS's motion to strike raises issues with several exhibits submitted by Bustos to support her opposition to the defendant's motion for summary judgment. Motion to Strike, pp. 1-2. Specifically, WCCS moves the court to strike the plaintiff's exhibits 13, 17, 21, 25, 30, 32, and 33. *Id.* WCCS argues that each of these exhibits are unauthenticated and contain inadmissible hearsay. *Id.* (In its motion to strike, the defendant raises only a hearsay objection to plaintiff's exhibit 32–authenticity is *not* an issue as to that exhibit.)

5

On October 3, 2008, the parties filed a Joint Stipulation Regarding Exhibits. Docket at 47. In this stipulation, WCCS agrees to withdraw or waive its authenticity objection to plaintiff's exhibits 17, 21, 25, 30, and 32. *Id.*[2] This withdrawal or waiver of objection is done only for purposes of the resolution of the motion for summary judgment, and the defendant reserves the right to reassert the objection if this case goes to trial. *Id.* According to the stipulation, WCCS *does not* withdraw or waive its objection to any of these exhibits on the grounds that they are inadmissible hearsay. *Id.* Finally, the stipulation does not affect WCCS's objections to plaintiffs exhibits 13 and 33, i.e., both of those exhibits are still subject to the defendant's authenticity *and* hearsay objections.

For the reasons discussed below, the court overrules the defendant's objections to the plaintiff's exhibits 17, 21, 25, 30, and 32, and DENIES the defendant's motion to strike those exhibits.[3] The court concludes that it is not necessary to consider plaintiff's exhibits 13 and 33 for purposes of ruling on the motion for summary judgment and so defendant's motion to strike is MOOT as to those two exhibits.

---

[2] The parties' stipulation specifically states that the defendant is withdrawing or waiving its authenticity objection to plaintiff's exhibit 32. However, the defendant's motion to strike did not raise any authenticity objection to that exhibit, only a hearsay objection. Also, the stipulation was subject to the plaintiff resubmitting the objectionable exhibits with certain portions redacted, which the plaintiff did. The revised exhibits were filed as attachments to the plaintiff's sur-reply. Docket at 51. Accordingly, in ruling on the motion for summary judgment and the motion to strike, the court reviewed and considered only the revised exhibits filed by the plaintiff.

[3] This ruling applies only for purposes of the court's consideration and ruling on the current motion for summary judgment. The ruling does not prohibit WCCS from reasserting its objections to any of these exhibits in a pretrial motion in limine or during trial, should the defendant conclude that such objections are valid and legitimate at that point in the litigation.

The exhibits at issue include the following:

1. Exhibit number 13 is a "Whitley County Consolidated Schools Business Testimonial" written by the plaintiff and posted on an internet website dedicated to a discussion of WCCS;

2. Exhibit number 17 is a collection of e-mails exchanged between employees and/or agents of WCCS and which involve or discuss the plaintiff;

3. Exhibit number 21 is a resume for plaintiff Jane Bustos prepared and used by the plaintiff;

4. Exhibit number 25 is an undated letter of reference from former WCCS Superintendent Dr. William J. Carnes written on behalf of Bustos;

5. Exhibit number 30 is an undated letter of reference from WCCS Principal Dan Curless written on behalf of Bustos;

6. Exhibit number 32 consists of three newspaper articles that make reference to the plaintiff; and

7. Exhibit number 33 is a document titled "Salary Comparisons for Principals at Elementary School Level," which is a table or chart prepared by the plaintiff during the course of this litigation.

WCCS objects to all of these exhibits on the ground that they are inadmissible hearsay in that they are offered to prove the truth of the matter or matters asserted therein. In each instance, the matter or matters at issue involve some discussion of the plaintiff or some reference to the plaintiff as the "principal" of a school within WCCS. Bustos insists that these exhibits are not being submitted to prove that Bustos was an elementary school principal (she concedes that she

never held that title[4]), but rather, that she was perceived and treated as one. Moreover, even high ranking employees of WCCS, such as Carnes, referred to her as a "principal." As Bustos states it, the exhibits are offered not to prove that Bustos was a principal, but "for the nonhearsay purpose of showing that the Plaintiff not only considered herself to be the Marshall principal, but the public considered her to be principal of her school, and the Defendant allowed her to represent herself as a principal. The reasonable inference is that the Defendant's key decision makers in 2004, 2005, and 2006 (such as Superintendent Huffman and members of the Board of Directors) were also aware that Plaintiff was widely regarded as the Marshall Community Center Principal." Plaintiff's Sur-Reply, docket at 51, p. 3.

For example, in his letter of recommendation on behalf of the plaintiff, Superintendent Carnes twice expressly refers to Bustos as "Principal of the Marshall Community Center." Plaintiff's Exhibit 25. Curless does likewise in his letter of recommendation. Plaintiff's Exhibit 30. Exhibit 32 consists of three articles that appeared at different times in the Columbia City, Indiana, *Post and Mail* newspaper–all of which reference Bustos and refer to her as a "principal." Exhibit 21 is a copy of the plaintiff's resume, in which she states that her job title

---

[4] At some point during her tenure, Bustos claims that Superintendent Carnes "gave her the title of Principal[.]" but she simultaneously notes that this was "[a]n unofficial title since it lacked the official approval by the School Board." Plaintiff's Memorandum/Answer Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), docket at 38, p. 8. In fact, the defendant concedes that "Dr. Carnes had unofficially titled Ms. Bustos 'Marshall Building Principal, [but] he did not have the required School Board authority to do so." Defendant's Memorandum, p. 6, n. 2. WCCS minimizes this fact (which the court finds rather significant) by reiterating that an employee's "title is irrelevant to any analysis under Title VII or the Equal Pay Act." *Id.* (citing *Fallon v. State of Illinois*, 882 F.2d 1206, 1208 (7th Cir. 1989)). It is true that titles alone are insufficient to prove that two employees do or do not perform substantially the same work. However, as discussed below, the use of the title "principal," especially by several of Bustos's supervisors, while not determinative, is a relevant piece of evidence in this particular case.

was "Director of Special Programs/Marshall Principal."

Plaintiff's Exhibit 17 appears–at least on its face–to be a particularly damning piece of evidence. This is the exhibit that consists of e-mails exchanged between Assistant Superintendent Sylvia Weber, Superintendent Carnes, and Bustos between the dates of July 17, 2003 and July 21, 2003. In those e-mails, Ms. Weber tells Carnes that WCCS should address what she perceives as an unfair pay differential between Bustos and "the other three elementary principals." Weber explains that in her opinion Bustos's "preparation is at least equal to/exceeds the preparation of the other three elementary principals." Weber goes on to state that "Jane is our only female elementary principal . . . . it does not appear equitable that her salary is so much less." In his response to that e-mail, Carnes writes that he will "take care of this. The reasons for the difference are no longer valid. This needs to be corrected." This exhibit is clearly relevant to the plaintiff's claims as it appears that high ranking employees of the defendant expressly acknowledge that Bustos did work that was equivalent to elementary school principals but received a lesser salary.

With respect to her claim under the EPA, Bustos must establish that she was performing work that was comparable to male elementary school principals within WCCS but receiving less pay. The exhibits–especially the e-mails and the letters from Carnes and Curless–certainly could be interpreted by a jury to show that even high ranking individuals within WCCS believed just that: that Bustos essentially acted as a "principal" and that her work at the Marshall Community Center was equivalent to the work of male principals in other of WCCS's schools. Such evidence is clearly relevant to the plaintiff's claims in this case and is admissible for reasons other than establishing or proving the narrow proposition that Bustos was a "principal" in the

9

strict sense of the word. It is true, as WCCS points out, that titles are not proof, in and of themselves, that a plaintiff was doing equivalent work to other similarly titled employees. Defendant's Reply, docket at 39, p. 6 (citing *Fallon v. State of Illinois*, 882 F.2d 1206, 1208 (7th Cir. 1989) and *EEOC v. Mercy Hosp. and Med. Ctr.*, 709 F.2d 1195, 1197 (7th Cir. 1983)) (to succeed on EPA claim, plaintiff "must establish, based upon actual job performance and content–not job titles, classifications or descriptions that the work performed . . . is substantially equal."). That is an accurate statement of the law. However, the evidence submitted by Bustos potentially goes far beyond simply addressing whether she held the title of principal. A jury could reasonably conclude that this evidence demonstrates that at least some of the plaintiff's coworkers and superiors believed she was performing the duties of a principal, and that her responsibilities and performance were equal to or superior to that of male principals within WCCS. In summary, this evidence is not being submitted simply to establish that Bustos held the title of "principal" (whether officially or unofficially). Instead, it is submitted to support Bustos's contention that she was actually *performing* the job of a principal and that WCCS *perceived* her to be a principal. This evidence is clearly relevant to issues in this case and, coupled with Bustos's arguments, creates genuine issues of fact that preclude summary judgment on both her Title VII claim and her EPA claim, as discussed below.

**2. Defendant's Motion for Summary Judgment.**

WCCS argues in its motion for summary judgment that it is entitled to judgment as a matter of law on both of the plaintiff's claims–her claim of sex discrimination under Title VII and her claim under the Equal Pay Act.

In order to establish a prima facie case of sex discrimination under Title VII, a plaintiff must show that: (1) she is a member of the protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated male employees more favorably. *Peirick v. Indiana University-Purdue Univ. Indianapolis Athletics Dept.,* 510 F.3d 681, 687 (7th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973)). Similarly, a plaintiff must establish certain elements in order to sustain a cause of action under the Equal Pay Act:

> The EPA prohibits employers from paying employees different wages based on gender. 29 U.S.C. § 206(d); *Varner v. Ill. State Univ.,* 226 F.3d 927, 932 (7th Cir. 2000). "To establish a prima facie case of wage discrimination under the EPA, [a plaintiff] must show," by a preponderance of the evidence, that: "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Stopka v. Alliance of Am. Insurers,* 141 F.3d 681, 685 (7th Cir. 1998). No proof of discriminatory intent is required. *Id.; see also Varner,* 226 F.3d at 932.

*Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008). For purposes of sustaining a Title VII claim, once a plaintiff has met her burden of establishing a *prima facie* case, the burden shifts to the defendant, who must present evidence of a legitimate, nondiscriminatory basis for the adverse treatment alleged by the plaintiff. The burden then shifts back to the plaintiff, who must establish that the nondiscriminatory reason proffered by the defendant is a pretext for discrimination. *Amrhein v. Health Care Service Corp.*, 546 F.3d 854, 859-60 (7th Cir. 2008) (citing *Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d 772, 784-85 (7th Cir. 2007)).

As the Seventh Circuit has explained, a similar burden-shifting scheme exists with respect to EPA claims:

> [Once a plaintiff establishes her *prima facie* case], the burden shifts to [the defendant] "to establish one of four statutory defenses." *Merillat v. Metal Spinners, Inc.,* 470 F.3d 685, 697 (7th Cir. 2006); *Fallon v. Illinois,* 882 F.2d 1206, 1211 (7th Cir. 1989) (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 196, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)). The statutory defenses kick in if the difference in pay is attributed to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d). The fourth exception is a "broad, 'catch-all' exception and embraces an almost limitless number of factors, so long as they do not involve sex." *Fallon,* 882 F.2d at 1211.
>
> So "[i]n effect, the provisions of the Equal Pay Act establish a rebuttable presumption of sex discrimination such that once an employee has demonstrated that an employer pays members of one sex more than members of the opposite sex, the burden shifts to the employer to offer a gender neutral justification for that wage differential." *Varner,* 226 F.3d at 932. The justification need not be a "good reason," but merely a gender-neutral one. *Wernsing v. Dep't of Human Servs.,* 427 F.3d 466, 468 (7th Cir. 2005). The justification "must also be bona fide. In other words, an employer cannot use a gender-neutral factor to avoid liability unless the factor is used and applied in good faith; it was not meant to provide a convenient escape from liability." *Fallon,* 882 F.2d at 1211.

*Warren*, 516 F.3d at 630.

WCCS concedes (at least for purposes of summary judgment) that Bustos meets the first three elements of her *prima facie* case under Title VII, but argues that her claim fails because she "cannot prove the fourth element or the intent element." Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Defendant's Memorandum"), docket at 26, p. 8. WCCS argues that Bustos's case is fatally flawed because "[t]he undisputed evidence demonstrates that . . . there were no similarly situated males (or females) to the plaintiff." *Id.* In addition, WCCS maintains that the plaintiff must establish "'the intent to discriminate, specifically the 'actual desire to pay women less than men because they are women.'" *Id.* (quoting *Cullen v. Indiana University Board of Trustees*, 338 F.3d 693, 704 (7th Cir. 2003) (in

12

turn quoting *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 525 (7th Cir. 1994)).[5]

Regarding Bustos's EPA claim, WCCS argues that Bustos cannot meet her *prima facie* burden because her "position with [WCCS] was a 'very unique' and 'one-of-a-kind' position." *Id.* WCCS maintains that Bustos was never entitled to be paid a salary equivalent to male elementary school principals because she was *not* an elementary school principal at any time during her employment and, according to WCCS, did not perform work that was substantially similar to that of a principal. *Id.*

The issue to be resolved then, for purposes of the defendant's motion for summary judgment, is whether the male elementary school principals were "similarly situated" to Bustos (for purposes of her Title VII claim) and, conjunctively, whether the work she performed was "substantially similar" to those male employees (for purposes of her EPA claim). The court concludes that genuine issues of fact exist on these crucial issues.

WCCS takes the position that the male principals it employed were *not* similarly situated to Bustos since they allegedly had greater responsibilities and performed a wider range of duties. WCCS uses the same argument to attempt to show that the work Bustos performed was not substantially similar to those male employees and/or was not performed under substantially similar working conditions. Bustos, of course, argues that her duties and responsibilities, while

---

[5] The *Cullen* case expressly states that this "intent" element applies only to a Title VII gender discrimination claim, not to an EPA claim. The defendant's brief does not make that distinction clear. *See Cullen*, 338 F.3d at 704. Furthermore, discriminatory intent is not an element of a Title VII plaintiff's *prima facie* case nor a fact that a plaintiff must prove in order to survive summary judgment. Rather, it is sufficient if a plaintiff raises a genuine issue of fact concerning the defendant's intent. Ultimately, of course, intent and motivation are quintessential jury questions, since they can virtually never be ascertained absent credibility determinations. *Seener v. Northcentral Technical Coll.,* 113 F.3d 750, 757 (7th Cir. 1997).

13

admittedly different in some respects, were nonetheless equivalent to those of the higher paid male principals. The parties devote the majority of their respective briefs to delineating the duties and responsibilities of Bustos as compared and/or contrasted with those of the male principals. Since the court concludes that material fact issues exist on the ultimate issues in this case, it is not necessary to discuss and analyze each and every detailed assertion made by each party. A general summary of each party's points and arguments will be sufficient to illuminate the court's reasoning.

WCCS explains that after working as a teacher for about 13 years, Bustos "applied for, and was given, the position of Director of Special Programs . . ." Defendant's Memorandum, p. 2. According to WCCS, "[t]he job posting described the position as supervising health services personnel, attendance services personnel and Buddy Project/staff development. . . . The job posting [also] stated that the Director Position would be responsible for vocational education, federal grant applications/monitoring, state grant applications/monitoring, adult/community education, health services, attendance services, instructional support areas, media services, guidance services and gifted education." *Id.*, pp. 2-3. At the time Bustos began her tenure as the Director, she received a salary of $52,670.00, which was "115% of the administrative base [salary]." *Id.*, p. 3. Her salary "increased over time as a function of the increase in the administrative base salary." *Id.* Bustos held this Director's position from 1997 until her resignation in 2006. *Id.* WCCS states that "[b]etween 2000 and 2004, responsibility for health services was transferred to the Assistant Superintendent, the attendance and Buddy Project responsibilities were eliminated and responsibility for vocational education was transferred to the high school." *Id.*

WCCS further states that "[i]n 2001, Ms. Bustos was responsible for the Marshall Community Center ('Marshall Building') which included the Diamond Center, a WCCS alternative school; OUR School Pre-School; the WCCS Gifted and Talented Program; some grant writing; fire, tornado and lock-down drills for the Marshall Building; school improvement plans for the Diamond Center and OUR School Pre-School; data collection; and a building budget." *Id.* According to WCCS, "[t]he majority of the Marshall Building was used for office space. . . . Only three of the five classrooms in the Marshall Building were used by [WCCS]." *Id.*, p. 4. "In a typical day between 2001 and 2006, Ms. Bustos was responsible for approximately forty (40) total students at the Marshall Building. . . . She also supervised four (4) teachers, three (3) or four (4) instructional assistants and two (2) custodians. . . . At most, two buses transported pre-school children to the Marshall Building." *Id.*, pp. 4-5. "Only three (3) pre-school students attended school all day and no Diamond Center students attended all day. . . . Only three (3) children at the Marshall Building were served lunch. . . . Neither the pre-school students nor the Diamond Center students received grades from the Marshall Building." *Id.*, p. 5.

WCCS then attempts to distinguish the duties and responsibilities of Bustos by contrasting them with those of the principal at the district's smallest elementary school in 2000–Coesse Elementary. WCCS states as follows:

> In stark contrast to the Marshall Building, Coesse had an average of 385 students and 40 teachers and instructional assistants between 2000 and 2006. . . . Between 2000 and 2006, the average number of elementary students enrolled per WCCS elementary school, per year, was 395 students. . . . Between 2000 and 2006, the average number of teachers and instructional assistants employed per WCCS elementary school, per year, was forty-five (45).
> . . .

15

> Furthermore, the Coesse students in first through fifth grade were in school the entire day. Coesse was equipped with a cafeteria that was fully-staffed with cooks and dishwashers. . . . Coesse also was equipped with a gymnasium where physical education was taught. . . . Coesse had between eight (8) and twelve (12) school buses."

*Id.*, p. 5.

WCCS goes on to explain that while "Dr. Weber and Dr. Carnes had considered Ms. Bustos to be the Marshall Building Principal, they acknowledged that Ms. Bustos's job duties and responsibilities did not 'fit neatly into the principal's box.'" *Id.*, p. 7 (citing to Defendant's Exhibit B, Deposition of William Carnes and Defendant's Exhibit C, Deposition of Sylvia Weber), docket at 25. WCCS also claims that Carnes and Weber "believed that Ms. Bustos had a very unique, one-of-a-kind, position with [WCCS]." *Id.* WCCS further maintains that "quite significantly, both Dr. Carnes and Dr. Weber concur that the decision to pay Ms. Bustos less than elementary school principals had nothing whatsoever to do with her gender." *Id.* In summary, WCCS argues that "[t]he Plaintiff's responsibilities may have included some principal-type responsibilities, but on a very small scale and with the addition of numerous non-principal-type duties." *Id.*, p. 8.

Not surprisingly, of course, Bustos presents a different spin on her career and her responsibilities during her years of employment with WCCS.[6] Bustos states that "[b]y 2001,

---

[6] Bustos recognizes that certain statutes of limitations apply to her Title VII claim and her EPA claim (e.g., limitations on the period for which she can claim disparate pay in relation to when she filed her Charge of Discrimination), but states that "the history of the development of Bustos[s] position as Principal, and long term history of disparate pay is relevant to an understanding of the context of her pay discrimination claims." Plaintiff's Reply, docket at 38, p. 3, n. 2. In any event, WCCS presents no challenge to the plaintiff's discussion of certain facts of her employment history that might pre-date any time period for which she can assert a disparate pay claim, and WCCS's same historical discussion begins with Bustos's appointment as Director in 1997.

16

[her] responsibilities had grown significantly, and she was in every respect the Principal and Building Administrator of her own school. . . . The people Bustos worked with, the community, her peers, recognized her [as] the Principal, [and] signs within the school building indicated she was Principal." Plaintiff's Memorandum/Answer Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), p. 3. Bustos points out that even her "official documents identified her as 'Principal' and/or 'Administrator.'" *Id.* Indeed, as Bustos points out, she is referred to as "Principal" many times even in her employment contracts with WCCS and addendums thereto. *See, e.g.,* Plaintiff's Response, Exhibits 5 (Employment Contract); 6 (Employment Contract and Addendum); 7 (Addendum to the Administrators Contract); and 11 (Performance Appraisal).

Bustos detailed in her brief how her duties and responsibilities arguably mirrored those of the male elementary school principals with WCCS, stating as follows:

> There was no difference between Ms. Bustos, her duties and responsibilities, nor anything else that caused her to deserve less money than other principals within the Whitley County Consolidated School district. . . . Ms. Bustos carried all the responsibilities handled by the principals at the other schools, and that is why Dr. Carnes gave her the [unofficial] title of Principal. . . . Principals, whether at a high school, elementary school, or the Marshall Community Center, were in charge of their entire building, including scheduling, and budgeting. . . . Ms. Bustos, like all of the Defendant's other school principals, fulfilled each of these responsibilities. . . . Although Bustos also had some unique aspects to her job at the Marshall Community Center, *all* of the principals within the Defendant's school system had some unique aspects to their jobs, and had ad hoc duties.

Plaintiff's Response, pp. 8-9.

Bustos presents some compelling evidence to support her contention that she performed substantially similar work to the male elementary school principals. For example, Bustos presents the following deposition testimony from Superintendent Carnes:

17

> Q.: Despite never having the formal title of principal, do you agree that she functioned as principal of Marshall Community Center?
>
> A.: Yes, I would agree with that.
>
> Q.: And in response to my earlier questions, I think you would agree, would you not, that she deserved, at least in your opinion–
>
> A.: In my opinion.
>
> Q.: –to be paid the same level of pay as principal?
>
> A.: That's what I would–as an elementary principal.
>
> Q. Yes. Is that correct?
>
> A.: That would be correct.

*Id.*, Exhibit 3, Deposition of William Carnes, p. 39. Later in his deposition, Carnes was asked about certain statements made by Assistant Superintendent Sylvia Weber concerning Bustos. Carnes testified as follows:

> Q.: "While Jane did serve the role as supervisor of special programs, she also served as, and was called, the principal at Marshall."
>
> A.: Yes.
>
> Q.: "The administrative team saw her as the principal at Marshall and the community saw her as the principal at Marshall and Dr. Carnes named her the principal at Marshall."
>
> A.: I did, yes.
>
> . . .
>
> Q.: Finally, "Jane was, without a doubt, the principal of Marshall. She was treated as principal, had her picture taken as a principal, served on committees as a principal, met with all other principals and was evaluated as a principal, but paid as a supervisor of special programs."
>
> A.: Director of special programs, yes.

*Id.*, pp. 40-41.  It was Ms. Weber who initiated the e-mail exchange that appears as Plaintiff's Exhibit 17, which was discussed previously.  In her e-mail to Superintendent Carnes, Weber wrote in part as follows:

> I continue to feel concerned that we have not addressed Jane's salary.  Her index is considerably lower than the other elementary principals and the dollar amount is less than our Grant/data person.  This is cause for concern in a variety of ways. Jane's preparation is at least equal to/exceeds the preparation of the other three elementary school principals. . . . Jane is our only female elementary principal . . . it does not appear equitable that her salary is so much less.

Plaintiff's Sur-Reply, docket at 51, Attachment 1 (Plaintiff's Exhibit 17).

Bustos argues that she was performing substantially the same work as the officially named principals within the WCCS–all of whom were male–but that she was paid substantially less.  She has submitted compelling evidence in support of her contentions.  WCCS does not dispute that Carnes and Weber considered Bustos to be the principal of the Marshall Community Center, concedes that Carnes "bestowed" that title upon her but argues that he did not have formal authority to do so, and concedes that Bustos had "some principal-type responsibilities, but on a very small scale."  In other words, Bustos was a principal but not really.  At trial, WCCS's argument may hold water with the jury.  But for purposes of summary judgment, where all reasonable inferences must be drawn in favor of the non-movant, Bustos's arguments and evidence carry the day.  The evidence submitted by Bustos clearly demonstrates that genuine issues of fact exist as to whether Bustos was "similarly situated" to the male elementary school principals and whether she performed "substantially similar work" under "substantially similar conditions."  Similarly, Bustos has raised a genuine issue of fact regarding WCCS's proffered non-discriminatory explanation for the disparity in pay (that she was not really a principal after all and so the disparity had nothing whatsoever to do with gender, even though all the other

elementary school principals were males). The facts, evidence and argument presented by the parties make it abundantly clear that this case is one that cries out for a jury, and that the defendant is not entitled to summary judgment on either the plaintiff's Title VII claim or her EPA claim.

## CONCLUSION

For the reasons set forth above, the motion to strike filed by the defendant Whitley County Community Schools is DENIED in part and MOOT in part; and the defendant's motion for summary judgment is DENIED.

Entered: January 28, 2009.

    /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana